## Commonwealth Trust Company of Pittsburgh, Appellant, *v.* Austin Givens, Inc.

650

Argued March 16, 1960. Before JONES, C. J., MUS-
MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*James A. Danahey,* with him *J. I. Simon,* for appellant.

*Frank W. Ittel,* with him *Reed, Smith, Shaw & McClay,* for appellees.

Opinion by Mr. Justice Benjamin R. Jones, May 23, 1960:

Austin Givens, the owner of a large wrecking business, died on July 6, 1935 survived by his widow, Rose Givens, and twelve children.

Shortly after Austin Givens' death, Rose Givens and the children entered into a written agreement relative to the disposition of his estate, an agreement approved by *all* the parties and by the Orphans' Court of Allegheny County. Under the terms of that agreement it was provided, inter alia: (1) that Rose Givens and *four* named sons would form a corporation—Austin Givens, Inc.—to carry on the decedent's business, said corporation to have "a single class of capital stock, in such amount and of such par value as the said Rose Givens (Widow) may determine"; (2) Rose Givens, as personal representative and as an individual, was to transfer to the new corporation all the assets of decedent's business and receive in return therefor capital stock of the new corporation having a total par value equal to the value of the assets transferred; the ownership of this stock was to be in *five* named sons in equal parts but the stock was to be issued to Rose Givens who would hold the stock for herself and the *five* sons under a declaration of trust attached to and made a part of the agreement; (3) Rose Givens was to be Chairman of the Board of Directors and Treasurer of the new corporation so long as she desired and to have "complete control over the affairs of said corporation"; (4) *three* sons and a daughter of decedent, who were owed $38,600 in back salaries by decedent's business at that time, agreed to relinquish, such claims against the decedent's estate and the new corporation would assume such obligations, provided that "said debts and obligations shall be payable only out of surplus or profits of said corporation applicable to the payment

of dividends, but having a preference over dividends and over the payment of surplus or profits to Rose Givens"; (5) *"The decision as to what constitutes surplus or profits of said corporation applicable to the payment of dividends shall be made by said Rose Givens (Widow) solely, and any determination thereof made by her shall be binding on all parties hereto"*.

The declaration of trust provided, inter alia, that Rose Givens would hold the stock of the new corporation in trust during her lifetime and, upon her death, the trust would terminate and the stock would be distributed to her *five* named sons. Under the terms of this trust before any dividends were paid on the stock or any surplus or profits of the corporation paid to Rose Givens, the $38,600 owing to the three sons and a daughter would first be paid, without interest, and "the decision as to what constitutes surplus or profits of said corporation applicable to the payment of dividends shall be made solely by [Rose Givens], and any determination thereof made by her shall be final and conclusive". Upon the payment[1] of the debt to the four children, "all dividends, or all surplus or profits applicable to the payment of dividends" were to be paid to Rose Givens "for her sole and exclusive use" during her lifetime.

The stock of the new corporation was issued, in accordance with the terms of the agreement and the trust, to Rose Givens. Rose Givens received a salary, annually, from the corporation from that time until her death. Rose Givens until the time of her death controlled and "bossed" the corporation in every respect. Rose Givens, outside of her salary, never received any dividends, surplus or profits from the corporation nor were any dividends ever declared by the corporation.

---

[1] This debt remained unpaid at the time Rose Givens died.

Rose Givens died, testate, on June 25, 1949. By her will she provided, inter alia, "that any and all interest which I may have in the ownership, control or stock of Austin Givens, Inc." be given to *four*[2] named sons but that the corporation should repay to her estate the amount of any loan or advance which she might make to the corporation subsequent to the will. Provisions were made for Rose Givens' other children both by will and by way of inter vivos gifts. On December 31, 1949 the corporation had a capital surplus of $109,400 and an earned surplus of $46,287.96.

During her lifetime—July 6, 1945— Rose Givens' lawyer, at her direction, prepared for her and she signed a letter which read, in part: "You boys [her four named sons] realize that your father in his will left me all of the income that might be earned from the business up to the time of my death. You boys realize that instead of taking the income from the business, I have left it in the business and permitted more than fair salaries to be paid to those of you who are active in the business. Not only have I left the earnings in the business, but I have also loaned the business from my own personal cash certain amounts, and all of this is now being left to you boys for your personal benefit. Each of you will get a share of that total. . . . Now I feel that the amounts that each of you will receive from what I left in the business will more than make up for the shares which your sisters receive. . . ."

The Commonwealth Trust Company of Pittsburgh, administrator c.t.a. of Rose Givens' Estate, the appellant, instituted an action in equity in the Court of Common Pleas of Allegheny County against Austin Givens, Inc. and three of Rose Givens' sons, individually, to compel the corporation to turn over to Rose

---

[2] One son predeceased Rose Givens.

Givens' Estate all of the "surplus" shown on the books of the corporation at the time of Rose Givens' death. After hearing, the court below entered a decree dismissing the complaint and from that decree this appeal was taken.

In brief, appellant takes the position that, even though the corporation declared no dividend nor passed any resolution directing payment of "surplus" to Rose Givens during her lifetime, the "surplus" belonged to Rose Givens at the time of her death and now is an asset of her estate.

The decree is affirmed on the following excerpts from the opinion of Judge NIXON of the court below: "A careful reading of the Agreement, with its exhibits, discloses that the parties to said Agreement recognized that there were many substantial questions as to the disposition made by Austin Givens of his estate. In order to eliminate the litigation that would have been necessary to have an adjudication of the respective rights of the parties, they entered into this Agreement. So far as the parties to this proceeding are concerned, it provides that all of the assets of his business were to be turned over to a corporation to be known as Austin Givens, Inc., with Rose Givens holding the stock as trustee. In the stock of the Corporation Rose Givens had a life estate and the five sons were the remaindermen. There are, however, a few distinct characteristics to the life estate of Rose Givens different from those of an ordinary life estate in stock of the corporation. The main distinction was that she had an absolute right to manage the Corporation and to determine what dividends, if any, were to be paid by the Corporation. Any dividends paid were to be her individual property. However, before any dividends could be paid on the stock, certain deferred salaries owing to four of the children had to be paid from the earnings of the Corporation.

"The uncontradicted testimony discloses that Mrs. Givens, from the time the Corporation was formed until her death, was active in the affairs of the Corporation and was paid a salary, the amount of which was fixed by her. It also shows that she was at all times advised by her attorney, a member of the Bar of this Court, as to her rights under the Agreement. None of the deferred salaries were ever paid. The record is devoid of any evidence to indicate that Mrs. Givens had at any time determined that there was any surplus or profits of the corporation available for the payment of dividends or deferred salaries. On the contrary, there is uncontradicted evidence that she elected to take a salary in lieu of her right to declare dividends.

"There is no doubt that Rose Givens had the sole right to determine what was payable as dividends. Under the Agreement which determines the rights of the parties here, her decision in that regard was final. Her decision was that no dividends be paid, and the plaintiff is bound by that decision.

## "Conclusions of Law

"1. Rose Givens at all times held all, of the capital stock of Austin Givens, Inc. as Trustee under the terms of her Declaration of Trust dated August 24, 1935. She individually was entitled to receive all dividends declared on the stock; she was entitled to vote all of the stock at all meetings of the shareholders; and she had the sole right to determine what constituted 'surplus or profits of said Corporation applicable to the payment of dividends.'

"2. Rose Givens at no time made any decision that there was surplus or profits of the Corporation applicable to the payment of dividends. On the contrary by her various acts she decided that there were no funds of the Corporation which constituted surplus or

profits which could or should be used to pay the deferred salaries or dividends. Her decision on this matter was final.

"3. The rights of the plaintiff rise no higher than those of Rose Givens. Since there were no dividends owing to her at the time of her death, there is nothing owing to plaintiff from the defendants, individual or corporate.

"4. Plaintiff has failed to prove any right to equitable relief against any of the defendants. Therefore the Complaint must be dismissed at the cost of the plaintiff."

Costs on appellant.